JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Avalign Technologies, Inc. and Millennium Surgical Corp.

## DEFENDANTS

VEC Surgical LLC f/k/a Millennium Equipment, LLC, Matthew Medveckus, and James Bruno

**(b)** County of Residence of First Listed Plaintiff    Cook County, IL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Montgomery County, PA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Julian D. Perlman
BakerHostetler, 1735 Market Street, Suite 3300, Philadelphia PA, 19103

Attorneys *(If Known)*

Michael Groh (Counsel for Matthew Medveckus)
Murphy Law Group, Eight Penn Ctr, Ste. 2000,
1628 John F. Kennedy Blvd., Philadelphia, PA 19103

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
      Plaintiff

☐ 2  U.S. Government
      Defendant

☒ 3  Federal Question
      *(U.S. Government Not a Party)*

☐ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☒ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding

☐ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from Another District *(specify)*

☐ 6  Multidistrict Litigation - Transfer

☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. § 1125, 18 U.S.C. §§ 1030, 18 U.S.C. § 1832, 18 U.S.C. § 1962, 28 U.S.C. § 2201, 29 U.S.C. § 2601

Brief description of cause:
Action related to misappropriation of Plaintiffs' trade secrets

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
Preliminary Injunction

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE
08/29/2023

SIGNATURE OF ATTORNEY OF RECORD
/s/ Julian D. Perlman

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 10275 W Higgins Rd #920, Rosemont, IL 60018 _____

Address of Defendant: _____ 237 Masters Drive, Pottstown, PA 19464 _____

Place of Accident, Incident or Transaction: _____ Montgomery County, Pennsylvania _____

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? — Yes ☐ No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? — Yes ☐ No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? — Yes ☐ No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? — Yes ☐ No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 08/29/2023 _____ /s/ Julian D. Perlman _____ 326602

*Attorney-at-Law / Pro Se Plaintiff* _____ Attorney I.D. # (if applicable)

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☑ 11. All other Federal Question Cases
  *(Please specify):* __ Trade Secrets and Intellectual Property __

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Julian D. Perlman _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: 08/29/2023 _____ /s/ Julian D. Perlman _____ 326602

*Attorney-at-Law / Pro Se Plaintiff* _____ Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AVALIGN TECHNOLOGIES, INC. and MILLENNIUM SURGICAL CORP.,<br><br>Plaintiffs,<br><br>v.<br><br>VEC SURGICAL LLC f/k/a MILLENNIUM EQUIPMENT, LLC, MATTHEW MEDVECKUS, and JAMES BRUNO,<br><br>Defendants. | CASE NO.<br><br>JUDGE<br><br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Avalign Technologies, Inc. ("Avalign") and Millennium Surgical Corp. ("Millennium Surgical") (collectively "Plaintiffs"), by and through their attorneys, assert the following causes of action against Defendants Vec Surgical, LLC (formerly known as Millennium Equipment, LLC) ("Millennium Equipment"), Matthew Medveckus, and James Bruno. In support of their claims, Plaintiffs aver the following, all upon their most recent knowledge, information, and reasonable belief:

1.      This case arises from Defendants Medveckus and Bruno's scheme to secretly steal customers and business from their then current employer, Millennium Surgical, utilizing Millennium Surgical's own IT systems, offices, computer networks, trade secrets and other competitive information and systems, and even Millennium Surgical's other employees.

2.      Under the guise of a new company—Millennium Equipment—Medveckus and Bruno solicited Millennium Surgical's suppliers and customers, with whom they had business relationships as part of their sales jobs at Millennium Surgical, in a plan to divert sales to their new intentionally confusingly named business. (Millennium Equipment formation documents—stored

on Millennium Surgical's computer network—indicate that three names for Defendants' new illegal venture were considered. Tellingly, all three contained "Millennium.")

3.      Medveckus, Bruno, and Millennium Equipment engaged in a campaign of unlawful conduct, both criminal and civil, over an extended period, including multiple acts of illegal conduct over relatively short periods of time—days, weeks, and months—during that two-year-plus period in a scheme to secretly compete with Millennium Surgical. Conspiring together, Millennium Equipment, Medveckus, and Bruno repeatedly:

   a.   Obtained unauthorized access to Plaintiffs' computers, stole and/or loaded electronic devices or accounts with Plaintiffs' trade secrets and other confidential and proprietary business information ("Avalign protected business information"), printed such information out for use or on behalf of Millennium Equipment, and otherwise misappropriated Millennium Surgical equipment and information for use by Millennium Equipment;

   b.   Engaged in theft, misappropriation, conversion, and unauthorized use of Avalign protected business information to unlawfully compete with Plaintiffs in order to take, or attempt to take, Millennium Surgical's suppliers, customers, and customer orders from Millennium Surgical;

   c.   Impersonated Millennium Surgical in order to lead customers to believe Millennium Equipment was affiliated or otherwise approved by Plaintiffs; and

   d.   Directed multiple Millennium Surgical employees to act in furtherance of Defendants' plot for the benefit of Millennium Equipment.

4.      This unlawful conduct continues today, even after Defendants were caught red-handed, reminded of their legal obligations, both contractual and otherwise, and demanded to cease and desist.

5.      Defendants' conduct complained of herein was undertaken for their purpose of growing the competing business of Millennium Equipment for Medveckus' and Bruno's own personal gains, and in the process, threatening and injuring Millennium Surgical so that Millennium Equipment could overtake Millennium Surgical's market share.

6.      Defendants' conduct has caused and continues to cause Plaintiffs great financial harm and immediate irreparable harm as a result of Millennium Surgical's ongoing loss of business and customers, goodwill, loss of confidentiality of its protected business information and trade secrets, and other harm to its reputation as a result of actions taken by Millennium Equipment, but associated with Millennium Surgical by its customers.

7.      Plaintiffs seek declaratory relief, preliminary and permanent injunctive relief, actual, punitive, and statutory multiplied damages against Defendants, the return of Avalign's stolen business information, the termination of the individual defendants' employment with Millennium Equipment, and the cessation of all business activities of Millennium Equipment as a competitor to Millennium Surgical.

## I.      PARTIES

8.      Plaintiff Avalign is a Delaware corporation with its principal place of business located at 10275 West Higgins Road, Rosemont, IL, and with significant business operations as offices in Pennsylvania. Avalign is an operating company that sources, designs, and manufactures medical devices, and serves surgical markets worldwide.

9.      Plaintiff Millennium Surgical is a wholly-owned subsidiary of Avalign. Millennium Surgical is a Pennsylvania corporation with its principal place of business located in Bala Cynwyd, PA. Millennium Surgical markets and distributes specialty surgical instruments, and sources hard-to-find surgical instrumentation. Millennium Surgical holds itself out as a one-stop resource for asking questions, conducting research, and purchasing instruments in the surgical marketplace.

10.     Defendant Millennium Equipment is a Pennsylvania corporation with its corporate headquarters located at 237 Masters Drive, Pottstown, PA.

11.     On July 7, 2023, Defendant Matthew Medveckus filed a Certificate of Amendment with the Pennsylvania Secretary of State, changing Millennium Equipment LLC's name to Vec Surgical LLC.

12.     Defendant Matthew Medveckus ("Medveckus") is an adult individual who resides at 237 Masters Drive, Pottstown, PA. Defendant Medveckus is one of the two owners, founders, and organizers of Millennium Equipment. He is also the President of Millennium Equipment. Medveckus worked for Millennium Surgical from January 6, 2014 to June 14, 2023.

13.     Defendant James Bruno ("Bruno") is an adult individual who resides at 4 Hilliard Way, Sewell, NJ. Bruno is one of the two owners, founders, and organizers of Millennium Equipment. He is also the Vice President of Millennium Equipment. Bruno worked for Millennium Surgical from July 9, 2018 to July 25, 2023.

## II.     JURISDICTION AND VENUE

14.     This court has subject matter jurisdiction over the federal claims in this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. 1964, and over the pendent state law claims pursuant to 28 U.S.C. § 1367.

15.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the principal place of business of defendant Millennium Equipment is within this district, significant unlawful acts asserted were planned and/or took place within this district, and significant witnesses, documents, and other evidence are located within this district.

## III.     FACTS COMMON TO ALL COUNTS

### Millennium Surgical Corp.—Background

16.     Millennium Surgical is a division of Avalign that specializes in its ability to consistently source and provide high-quality specialty surgical instruments to its customers.

17. The surgical instrument field is highly competitive. Millennium Surgical's success depends on its ability to effectively source instruments from suppliers and provide those instruments to downstream customers in a time- and cost-sensitive manner. Thus, both the customer relationship and the supplier relationship are critical components to Millennium Surgical's success in the market.

18. Millennium Surgical has been in the surgical instrument business for more than two decades, and over that time has developed critical relationships with suppliers and customers. Those business relationships, including the goodwill generated from them, enable Millennium Surgical to compete in the surgical instrument industry.

19. As a result, Millennium Surgical's knowledge of its suppliers' capabilities to meet customers' demands, including pricing information, is proprietary information of Millennium Surgical, a trade secret that Millennium Surgical does not authorize its employees to disclose.

20. Millennium Surgical's knowledge of its customers surgical instrument needs, including pricing information, is also proprietary information of Millennium Surgical, a trade secret that Millennium Surgical does not authorize its employees to disclose.

21. Millennium Surgical has used the "Millennium Surgical" Mark in commerce throughout Pennsylvania and the United States continuously since 1994 in connection with the manufacture, distribution, sale, marketing, advertising, and promotion of surgical instruments.

22. As a result of its widespread, continuous, and exclusive use of the "Millennium Surgical" Mark to identify its surgical devices and Millennium Surgical as their source, Plaintiffs own valid and subsisting federal statutory and common law rights to the "Millennium Surgical" Mark. Plaintiffs owned these rights prior to the Defendants' registration and use of the "Millennium Equipment" Name and other acts of the Defendants alleged herein.

23.     Plaintiffs' "Millennium Surgical" Mark is distinctive to both the consuming public and Plaintiffs' trade.

24.     Plaintiffs have expended substantial time, money, and resources marketing, advertising, and promoting the "Millennium Surgical" Mark including through internet, email, social media, brochures, mailers, and phone.

25.     Millennium Surgical sells and distributes the surgical instruments under the "Millennium Surgical" Mark throughout Pennsylvania and the United Sates.

26.     Millennium Surgical offers and sells surgical instruments under its "Millennium Surgical" Mark to hospitals, medical centers, surgery centers, and other clinics.

27.     The surgical instruments Plaintiffs offer under the "Millennium Surgical" Mark are of high quality. Plaintiffs only sell new, unused surgical instruments. In addition, Millennium Surgical offers a lifetime warranty on all surgical instruments it sells.

28.     Millennium Equipment also permits customers to return unused purchases within 30 days.

29.     As a result of Plaintiffs' expenditures and efforts, the "Millennium Surgical" Mark has come to signify the high quality of the goods and services provided by Millennium Surgical and acquired incalculable distinction, reputation, and goodwill belonging exclusively to Plaintiffs.

30.     The "Millennium Surgical" Mark and the goods and services offered thereunder have received coverage in various media, including Healthcare Purchasing News, Infection Control Today, Outpatient Surgery News, Inc. Magazine, Business Wire, and others.

31.     As a result of its distinctiveness and widespread use and promotion throughout the Pennsylvania, Plaintiffs' "Millennium Surgical" Mark is a famous trademark within the meaning of 54 Pa. C.S.A. § 1124, and became famous prior to the acts of the Defendants alleged herein.

**The Individual Defendants**

*Medveckus and the Confidentiality and Non-Compete Agreement*

32.     Medveckus worked for Millennium Surgical from 2014 to 2023 as a medical supply sales professional, including as a sales team lead. As a Sales Team Lead, Medveckus was responsible not only for selling surgical instrument products but also for supervising the sales team that reported to him.

33.     As a sales professional for Millennium Surgical, Medveckus was entrusted with Millennium Surgical's confidential, trade secret, and proprietary business information, including supplier and customer preferences and pricing information, to fulfill his job duties in Millennium Surgical's interest.

34.     Medveckus had numerous primary and secondary customer accounts that he serviced, relying on Millennium Surgical's confidential, trade secret, and proprietary business information—information that Medveckus gained only through and because of his employment with Millennium Surgical.

35.     The suppliers and customers with whom Medveckus interacted professionally understood him to be affiliated with Millennium Surgical and associated him with Millennium Surgical, and vice versa.

36.     Medveckus also signed an agreement with Millennium Surgical ("Confidentiality and Non-Compete Agreement") that obligated him to preserve Millennium Surgical's confidential and trade secret information as well as to refrain from competing against Millennium Surgical for a specified time period and prohibited him from soliciting suppliers and customers in competition with Millennium Surgical. In relevant part, the Confidentiality and Non-Compete Agreement provides that Medveckus while employed by Millennium Surgical and for 24 months after termination:

Shall not, directly or indirectly, enter into or engage in the ownership, management, operation, or control of, or act as an employee of, or consultant, advisor, contractor, or subcontractor to, any existing or proposed business entity engaged or planning to be engaged in the Company's Business, if such entity competes directly or indirectly with the Company's Business. For the purposes of this Agreement, the Company's Business shall mean the sale, distribution and/or supply of surgical instruments, specialized disposable products, cataract supplies, and any other products or goods sold or distributed by the Company.

(Confidentiality and Non-Compete Agreement ¶ 1).

Will not directly or indirectly, on my own behalf or for the benefit of any natural person, corporation, partnership, trust, estate, joint venture, sole proprietorship, association, cooperative or other entity ("Person"), solicit, service, contact, or aid in the solicitation, servicing or contacting of any Person which is or was a Company customer, vendor or supplier within two (2) years prior to the termination of my employment ("Company Customers"), for the purpose of (a) selling goods and services in competition with the Company's Business, (b) inducing Company Customers to cancel, transfer or cease doing business in whole or in part with the Company or (c) inducing Company Customers to do business with any Person or business entity in competition with the Company's Business.

(Id. ¶ 2).

Will not directly or indirectly, for my own behalf or for the benefit of any other Person, solicit, aid in solicitation of, induce, encourage or in any way cause any Company employee to leave the employee of the Company.

(Id. ¶ 4).

Will learn and have access to the Company's trade secrets, confidential information, and proprietary materials, which including but are not limited to, Company customer lists, customer accounts and information, prospective customer lists and information, products, product identification, parts data base, research, know-how, services, techniques, methods of operation, pricing, costs, sales, sales strategies, and methods, marketing, marketing strategies and methods, policies, financial information, financial condition, and other information which is generally not available to the public and which has been developed or acquired by the Company with considerable effort and expense ("Confidential Information").

(Id. ¶ 5).

37.    Pursuant to the Confidentiality and Non-Compete Agreement, Medveckus agreed

"to hold all of the foregoing Confidential Information in the strictest confidence and shall not

disclose, divulge or reveal the same to any Person during the term of [your] employment with the Company or at any time thereafter." (*Id.*)

38.     He further agreed that he would "not remove any Company Confidential Information or any other Company documents from the Company's office" without permission. (*Id.*)

*Bruno*

39.     Bruno worked for Millennium Surgical from 2018 to 2023 as a medical supply sales professional.

40.     As a sales professional for Millennium Surgical, Bruno was entrusted with Millennium Surgical's confidential, trade secret, and proprietary business information, including supplier and customer preferences and pricing information, to fulfill his job duties in Millennium Surgical's interest.

41.     The suppliers and customers with whom Bruno interacted professionally understood him to be affiliated with Millennium Surgical and associated him with Millennium Surgical, and vice versa.

42.     Bruno had numerous primary and secondary customer accounts that he serviced, relying on Millennium Surgical's confidential, trade secret, and proprietary business information—information that Bruno gained only through and because of his employment with Millennium Surgical.

43.     Bruno executed a Confidentiality and Non-Compete Agreement with Millennium Surgical that obligated him to maintain the confidentiality of Millennium Surgical's trade secrets and to refrain from competing against Millennium Surgical in the same manner as the Confidentiality and Non-Compete Agreement signed by Medveckus.

44.     Bruno also received and acknowledged the Employee Handbook.

**Other Persons**

45.    Denise Smith ("Smith") currently works as a sales professional for Millennium Surgical. Smith has worked for Millennium Surgical since October of 2016. Smith reported to Medveckus when Medveckus held the position of sales team lead.

46.    As a sales professional for Millennium Surgical, Smith was entrusted with Millennium Surgical's confidential, trade secret, and proprietary business information, including supplier and customer preferences and pricing information, to fulfill her job duties in Millennium Surgical's interest.

47.    The suppliers and customers with whom Smith interacted professionally understood her to be affiliated with Millennium Surgical and associated her with Millennium Surgical, and vice versa.

48.    Smith had numerous primary and secondary customer accounts that she serviced, relying on Millennium Surgical's confidential, trade secret, and proprietary business information—information that Smith gained only through and because her his employment with Millennium Surgical.

49.    On October 7, 2016, Smith executed a Confidentiality and Non-Compete Agreement with Millennium Surgical that obligated her to maintain the confidentiality of Millennium Surgical's trade secrets and to refrain from competing against Millennium Surgical in the same manner as the Confidentiality and Non-Compete Agreement signed by Medveckus.

50.    Smith also received and acknowledged the Employee Handbook.

51.    Jeff Cranage ("Cranage") worked as a medical sales professional for Millennium Surgical from September 25, 2017 until August 7, 2023.

52.     As a sales professional for Millennium Surgical, Cranage was entrusted with Millennium Surgical's confidential, trade secret, and proprietary business information, including supplier and customer preferences and pricing information, to fulfill his job duties in Millennium Surgical's interest.

53.     The suppliers and customers with whom Cranage interacted professionally understood him to be affiliated with Millennium Surgical and associated him with Millennium Surgical, and vice versa.

54.     Cranage had numerous primary and secondary customer accounts that he serviced, relying on Millennium Surgical's confidential, trade secret, and proprietary business information—information that Cranage gained only through and because of his employment with Millennium Surgical.

55.     On September 18, 2017, Cranage executed a Confidentiality and Non-Compete Agreement with Millennium Surgical that obligated him to maintain the confidentiality of Millennium Surgical's trade secrets and to refrain from competing against Millennium Surgical in the same manner as the Confidentiality and Non-Compete Agreement signed by Medveckus.

56.     Cranage also received and acknowledged the Employee Handbook.

### Formation of Millennium Equipment

57.     On June 17, 2020, Medveckus and Bruno—while working for Millennium Surgical—formed a new company and named it Millennium Equipment LLC, filing a Certificate of Organization Domestic Limited Liability Company with the Pennsylvania Department of State.

58.     Just like Millennium Surgical, Millennium Equipment sold and continues to sell surgical instruments and other medical devices to hospitals, medical centers, surgery centers, and other clinics.

59.     Millennium Equipment was created to unlawfully compete by using the same suppliers as Millennium Surgical to sell to the same customers that Millennium Surgical services, which information was only known to Defendants as a result of Medveckus and Bruno's employment with Millennium Surgical.

60.     Medveckus and Bruno, while working for Millennium Surgical and using Millennium Surgical computers, created Millennium Equipment administrative documentation that described the manner in which they would operate Millennium Equipment and share in the profits of Millennium Equipment.

61.     Millennium Equipment documentation also reveals that Medveckus and Bruno considered the names "Millennium Medical Equipment LLC" and "Millennium Medical Supplies LLC" in addition to "Millennium Equipment LLC." (*Id.*)

62.     Millennium Equipment is located at Medveckus' home address in Pottstown, PA.

63.     Medveckus and Bruno did not disclose to Avalign that they formed Millennium Equipment.

64.     Avalign first learned of Millennium Equipment on or about June 20, 2023, when a customer sent an email to Millennium Surgical inquiring about a Millennium *Equipment* order.

65.     Upon learning of Millennium Equipment's existence, Avalign conducted an internal investigation, including but not limited to analyzing the emails and computer systems that Medveckus and Bruno used while working for Millennium Surgical.

66.     Millennium Equipment would not have had access to Millennium Surgical's suppliers and customers but for the decades-long relationships created by Millennium Surgical that Medveckus and Bruno had access to as Millennium Surgical sales professionals.

67. Millennium Surgical did not authorize Medveckus and Bruno to engage with Millennium Surgical suppliers and customers on behalf of Millennium Equipment.

68. Medveckus and Bruno conducted their competition with Millennium Surgical via Millennium Equipment in secret. They did not disclose to Millennium Surgical that they were competing against their employer by obtaining surgical instruments from suppliers who they knew only through their employment with Millennium Surgical. Nor did they disclose to Millennium Surgical that they were selling surgical instruments via Millennium Equipment to the same hospital system customers who they serviced for Millennium Surgical. Nor did Medveckus and Bruno disclose to Millennium Surgical that they were accessing Millennium Surgical's customer, supplier, pricing, equipment listing, customer preference, and supplier capacity information on behalf of Millennium Equipment to facilitate Millennium Equipment's business objectives.

69. In order to carry out their secret competition scheme, Medveckus and Bruno—without authorization—accessed Millennium Surgical's computer system and obtained purchase order and quote forms containing Millennium Surgical logos and/or trade dress. They then modified the Millennium Surgical forms to say "Millennium *Equipment*" while it otherwise appears as though the forms were still Millennium Surgical's forms.

70. Without Plaintiffs' authorization, and beginning after Plaintiffs acquired protectable exclusive rights in its "Millennium Surgical" Mark, Defendants adopted and began using the nearly identical mark "Millennium Equipment" (hereinafter, the "Infringing Mark") in US commerce.

71. Defendants have been engaged in the distribution, provision, advertising, promotion, offering for sale, and sale of surgical instruments using the Infringing Mark in Pennsylvania and throughout the US.

72.     The Infringing Mark adopted and used by Defendants is nearly identical and/or confusingly similar to Plaintiffs' "Millennium Surgical" Mark. Table 1 below shows an example of a Millennium Surgical form from which Medveckus and Bruno created Millennium Equipment sales forms without disclosing their conduct to Millennium Surgical.

TABLE 1



| Millennium Surgical order form | Millennium Equipment order form |
|---|---|

73.     Various elements are identical and/or confusingly similar, including the "Millennium" name, and the use of identical fonts, font sizes, and formatting.

74.     In addition, Medveckus and Bruno used their knowledge of Millennium Surgical customer preferences to sell surgical instruments that Millennium Surgical otherwise would have sold to the customers. Instead of Millennium Surgical obtaining the sale, however, Medveckus and Bruno kept it for Millennium Equipment, paying themselves through the profits of their secret competing company.

75.     Medveckus and Bruno used Millennium Surgical's computer equipment and systems to run their Millennium Equipment business, including accessing and obtaining orders, communicating with customers, and maintaining Millennium Equipment's accounting information.

76.     Upon information and belief, several of the surgical instruments Millennium Equipment has sold under the Infringing Mark are used and/or refurbished instruments. Plaintiffs strictly sell only new, unused surgical instruments because Millennium Surgical guarantees the highest quality surgical instruments. Poor quality surgical instruments pose a high risk to patients and surgeons, and consequently surgical instrument distributors and suppliers. *See, e.g.*, Dominguez & Rocos, *Patient Safety Incidents Caused by Poor Quality Surgical Instruments*, CUREUS (June 10, 2019), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6687421/.

77.     Defendants' infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Millennium Surgical's surgical instruments and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Millennium Equipment's products originate from, are associated or affiliated with, or are otherwise authorized by Plaintiffs.

78.     All information alleged herein is known to Millennium Surgical because it was maintained by Medveckus and Bruno on Millennium Surgical's computer systems and accounts and located there.

79.     Defendants' infringing acts as alleged herein have resulted in actual confusion.

80.     For example, in February through April 2023, Millennium Equipment impersonated Millennium Surgical to sell surgical instrumentation to one of Medveckus' top Millennium Surgical customers—Dune Grass Surgical Suites. Millennium Equipment supplied the requested instrumentation by procuring it through FiberOptics Tech, Inc. and then reselling it to Dune Grass. FiberOptics Tech, not understanding the difference between Millennium Surgical and Millennium Equipment, delivered the accounts receivable invoices for the product to Medveckus' Millennium Surgical email address. These are sales that Medveckus, as a Millennium

15

Surgical employee, should have made for Millennium Surgical. Instead, by manipulating Millennium Surgical forms, he impersonated Millennium Surgical and caused third parties to believe they were dealing with Millennium Surgical when in fact they were dealing with the confusingly-named Millennium Equipment.

81.     Additionally, several customers, mistaking Millennium Equipment as an affiliate and/or representative of Millennium Surgical, have reached out to Millennium Surgical personnel requesting updates on purchase orders.

82.     For instance, on August 23, 2023, one of Millennium Surgical's longtime customers, Providence Health, sent an email to Medveckus' Millennium Surgical email requesting the status of a Millennium Equipment order.

83.     Defendants' acts are willful with the deliberate intent to trade on the goodwill of Plaintiffs' "Millennium Surgical" Mark, cause confusion and deception in the marketplace, and divert potential sales of Plaintiffs' customers to the Defendants.

84.     By way of example, Medveckus and Bruno, without authorization and on behalf of Millennium Equipment, communicated with each other using their Millennium Surgical computers and email accounts to facilitate Millennium Equipment's business. They would, for

instance, receive inquiries from Millennium Surgical customers and then, instead of fulfilling those requests on behalf of Millennium Surgical, funnel the business through their Millennium Equipment scheme.

85.    An example of this occurred in August of 2022, when a California-based customer emailed Bruno at his Millennium Surgical email address and sought to place an order:



86.    Bruno forwarded the email to Medveckus at his Millennium Surgical email address. Medveckus, using his Millennium Surgical email, first advised Bruno that Millennium Equipment could fulfill the request because the customer was already set up to do business with Millennium Equipment.

> **From:** Matthew Medveckus <MMedveckus@millenniumsurgical.com>
> **Sent:** Monday, August 22, 2022 11:21 AM
> **To:** Jim Bruno <JBruno@millenniumsurgical.com>
> **Subject:** RE: Good Morning!!
>
> ME is set up with Providence / St. Joesph. You can get these through them
>
> This Morning I am looking for: Zimmer Dermatome Plates (the reusable ones)
> 00-8802-002-00  2"
> 00-8802-001-00  1"
> and the cord if you have it
> 00-8801-002-00
>
> *Matt Medveckus*
> *Sales Team Lead*
> **Millennium Surgical Corp**
> **(215) 317-5879 Mobile**
> **Email: mmedveckus@millenniumsurgical.com**

87.     Then Medveckus, using his Millennium Surgical email but operating secretly on behalf of Millennium Equipment, directed Bruno to procure the products for Millennium Surgical's customer on behalf of Millennium Equipment, and to be sure to use Bruno's Millennium Equipment email address when doing so.

> **From:** Matthew Medveckus <MMedveckus@millenniumsurgical.com>
> **Sent:** Monday, August 22, 2022 11:22 AM
> **To:** Jim Bruno <JBruno@millenniumsurgical.com>
> **Subject:** RE: Good Morning!!
>
> From ME email send this to –
>
> Noor Jaber njaber@ciamedical.com
>
> *Matt Medveckus*
> *Sales Team Lead*
> **Millennium Surgical Corp**
> **(215) 317-5879 Mobile**
> **Email: mmedveckus@millenniumsurgical.com**

88.     By way of additional example, some of the improper conduct that Medveckus and Bruno engaged to defraud Millennium Surgical by competing against it using Millennium Surgical trade secrets and computer system includes, but is not limited to:

    a.   Using Millennium Equipment to impersonate Millennium Surgical

Defendants used Millennium Surgical quotes, but replaced the name and contact information with Millennium Equipment, LLC to divert customer and orders. Customer Regional One Health was one of the largest Millennium Surgical customers serviced by Bruno.

b.  Medveckus and Bruno concealed their illicit activities.

Attempting to hide their illicit activities, Medveckus and Bruno directed customers to send all communications to Millennium Equipment email addresses.  In the example below, a customer sent a purchase order to Medveckus' Millennium Surgical email. Medveckus then responded from his Millennium Equipment email, stating "Please send all correspondence including Purchase Orders to this email address only."

**From:** Elfi CHIA <elfi.chia@transmedicgroup.com>
**Sent:** Tuesday, October 11, 2022 10:48 AM
**To:** Matthew Medveckus <MMedveckus@millenniumsurgical.com>
**Cc:** Joanne LAI <joanne.lai@transmedicgroup.com>; Zhe Min Shee <zhemin.shee@transmedicgroup.com>; Babu Anantharaman <babu.anantharaman@transmedicgroup.com>; Paing Thu Soe <paing.thusoe@transmedicgroup.com>; Yousheng Zhuo <yousheng.zhuo@transmedicgroup.com>
**Subject:** PO2300627 MILLENIUM EQUIPMENT

[EXTERNAL EMAIL] DO NOT CLICK links or attachments unless you recognize the sender and know the content is safe.

Dear Matthew,

Please refer to the attachment for PO2200627.

Please acknowledge the receipt and revert with confirmation

---

**From:** Matt Medveckus <matt@millenniumequip.com>
**Sent:** Tuesday, 18 October 2022 9:53 PM
**To:** Elfi.chia@transmedicgroup.com>
**Cc:** Joanne LAI <joanne.lai@transmedicgroup.com>; Zhe Min Shee <zhemin.shee@transmedicgroup.com>; Babu Anantharaman <babu.anantharaman@transmedicgroup.com>; Paing Thu Soe <paing.thusoe@transmedicgroup.com>; Yousheng Zhuo <yousheng.zhuo@transmedicgroup.com>
**Subject:** Fw: PO2300627 MILLENIUM EQUIPMENT

Some people who received this message don't often get email from matt@millenniumequip.com. Learn why this is important

Good Morning Elfi -

Please send all correspondence including Purchase Orders to this email address only. (matt@millenniumequip.com)

---

   c. Using Millennium Equipment to steal business from Millennium Surgical—Providence St. Peters

      Millennium Equipment used Medveckus' relationship with his Millennium Surgical customers to steal Millennium Surgical business opportunities from those customers, who did not know the difference between Millennium Equipment and Millennium Surgical. In the example below, Millennium Equipment sold supplies to Providence St. Peter Hospital, a Millennium Surgical customer. The purchase order indicates the supplier is Millennium Equipment. But the email address that the customer used to submit the purchase order was Medveckus' Millennium Surgical email address. By falsely impersonating Millennium Surgical, Millennium Equipment caused customers to think they were contracting with Millennium Surgical when in fact, they were contracting with Millennium Equipment, which enjoyed the profits of the transaction by impersonating Millennium Surgical.



d. Using Millennium Surgical to run Millennium Equipment's operations

Medveckus and Bruno secretly used Millennium Surgical's computers, computer systems, electronic documents, electronic email accounts, and other accounts to operate Millennium Equipment without notifying Millennium Surgical. In July and August 2023, Millennium Surgical, after learning of the existence of Millennium Equipment, conducted an examination of the Millennium Surgical computers and email accounts used by Medveckus and Bruno. That investigation revealed that Medveckus and Bruno secretly relied on Millennium Surgical computers and electronic accounts to do the following on behalf of Millennium Equipment:

   i.   Send product quotes to customers;

   ii.  Send and receive purchase orders;

   iii. Store company organizing documents;

    iv.    Create and store profit distribution documents;

    v.    Create and store banking applications;

    vi.    Create and store customer shipping labels;

    vii.    Communicate with Millennium Surgical's customers;

    viii.    Communicate with Millennium Surgical's suppliers; and

    ix.    Create and modify Millennium Surgical orders, invoices, and quotes.

e.    Using Millennium Equipment to compete with Millennium Surgical—Regional One Health

Millennium Equipment used Millennium Surgical's relationship with a key customer and knowledge of that customer's needs to provide estimates and fulfill orders under the Millennium Equipment name, impersonating Millennium Surgical. Millennium Equipment would not have been able to establish a customer connection but for the confidential relationship created by Millennium Surgical. For example, in one instance, Bruno, secretly on behalf of Millennium Equipment, provided an estimate for $2,760 worth of surgical instrumentation to longtime Millennium Surgical customer Regional One Health. The quote Bruno sent to One Regional Health utilized a fraudulently created Millennium Equipment form and containing confidential and proprietary trade secret information stolen from Millennium Surgical. While the transaction occurred on March 12, 2021, Millennium Surgical did not discover it until July 10, 2023, when Millennium Surgical conducted a forensic analysis of Bruno's computer.

**Millennium Equipment LLC**

237 Masters Drive
Pottstown, PA 19464
United States

Phone: +1 215-317-5879

Estimate #:  1002
Estimate date:  Mar 12, 2021

Bill To:

Regional One Health
877 Jefferson Avenue
Memphis, TN 38103
United States

Ship To:

Regional One Health
877 Jefferson Avenue
Memphis, TN 38103
United States

Millennium Surgical's internal investigation of Bruno's computer also revealed a Millennium Equipment product quote addressed to Regional One Health and dated August 25, 2020. In addition to containing confidential and proprietary trade secret information stolen from Millennium Surgical, the document bears the words "Millennium Surgical" on the top right each page. Furthermore, the document metadata reveals that the document was created by Millennium Surgical.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Millennium Equipment LLC** | | | | | | | |
| *237 Masters Drive* | | | | | | | |
| *Pottstown, PA 19464* | | | | | | | |
| *484-941-1672* | | | | | | | |
| | | | | | | | |
| Client Name | | | | | | | |
| **Regional One Health** | | | | | | | |
| **877 Jefferson Ave** | | | | | | | |
| **Memphis, TN 38103** | | | | | | | |
| Surgical Equipment | | | | | | | |
| Alias | Millennium Part # | Item Description | Memo | Qty | Sell | Ext | |
| BSGM-0011 | BSGM-0011 | 4.5 inch Brennen Skin Graft Mesher | 1:1 Expansion Ratio | 1 | $ 2,995.00 | $2,995.00 | |
| | | | Quote Total | | | $2,995.00 | |

f. Using Millennium Surgical employees to steal business from Millennium Surgical on behalf of Millennium Equipment—Doctors at Renaissance

In May 2022, defendants caused Millennium Equipment to use Millennium Surgical personnel, including sales representative Denise Smith, to make sales to a customer that would have gone to Millennium Surgical. Instead, by creating false invoices impersonating Millennium Surgical, and using Millennium Surgical's contact information, Millennium Equipment obtained the sale at Millennium Surgical's expense.



g. Using Millennium Surgical employees suppliers to steal business from Millennium Surgical for the benefit of Millennium Equipment—Source Surgery Center

In July 2022, Defendants caused Millennium Equipment to use Millennium Surgical personnel, including sales representative Jeff Cranage, and Millennium Surgical's trade secret and contact information to purchase equipment from MedCo Manufacturing (a Millennium Surgical supplier) and then make sales to Source Surgery Center (a Millennium Surgical customer). These sales should have gone to Millennium Surgical. Instead, by creating false invoices impersonating Millennium Surgical, and using Millennium Surgical's contact information, Millennium Equipment obtained the sale at Millennium Surgical's expense.



h. Using Millennium Surgical employees to steal business from Millennium Surgical on behalf of Millennium Equipment—Avoyelles Hospital

From June to December 2021, Defendants caused Millennium Equipment to use Millennium Surgical personnel, including sales representative Jeff Cranage, to make sales to a customer that would have gone to Millennium Surgical. Instead, by creating false invoices impersonating Millennium Surgical, and using Millennium Surgical's contact information, Millennium Equipment obtained the sale at Millennium Surgical's expense.



    i.   Millennium Equipment paid Cranage for the orders he redirected from Millennium Surgical to Millennium Equipment.

### Jeff Sales Commission

| Customer | Invoice # | Invoice | Cost | Net Profit | Commission | Date Paid |
|---|---|---|---|---|---|---|
| Avoyelles Hospital | 11053 | $7,975.00 | $3,090.00 | $4,885.00 | $4,000.00 | 6/4/21 |
| Utah Facial Plastics | 11062 | $1,200.00 | $1,095.00 | $105.00 | $78.75 | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| **Totals** | | | | $4,990.00 | $4,078.75 | |

Rate 75% of Net

    j.   Using Avalign employees to steal business from Millennium Surgical on behalf of Millennium Equipment

In February 2020, Medveckus utilized Avalign employee Veronica to change the shipping address on a Millennium Surgical purchase order to Medveckus' home. Then, on behalf of Millennium Equipment, and using Millennium Surgical's supplier and customer contact information, Medveckus sold the products to a customer—a sale that would have gone to Millennium Surgical.

> **From:** Matthew Medveckus <MMedveckus@millenniumsurgical.com>
> **Sent:** Wednesday, February 8, 2023 2:06 PM
> **To:** Veronica Garcia <VGarcia@avalign.com>
> **Subject:** Update Shipping Address
>
> Hi Veronica –
>
> Could you please update the ship to address on MSC PO# 139886 to.
>
> 237 Masters Dr.
> Pottstown, PA 19464
>
> Thank You,
>
> **Matt Medveckus** | **Millennium Surgical**

k. Cartessa Aesthetics, LLC (Customer)—Elmed (Supplier)

In August 2022, Medveckus used his Millennium Surgical email to contact Millennium Surgical supplier Elmed about making a custom product "for a client of ours."

> **From:** Matthew Medveckus <MMedveckus@millenniumsurgical.com>
> **Sent:** Wednesday, August 10, 2022 7:50 AM
> **To:** Rick Goettel <rick@elmed.com>
> **Cc:** Javier Dominguez <javier@elmed.com>
> **Subject:** Custom Cannula
> **Importance:** High
>
> Hey Rick –
>
> I spoke with Javier last week about making a cannula for a client of ours. Below are the pictures of what they sent me as well as a sizing chart we used to get the sizing specifics. They are looking to order a large quantity in two lengths but would like to see a sample first just to verify. Would you be able to make up one sample at 14 gauge x 150mm? Could you also give me what our cost would be for this? I will pay you directly for the sample piece.

Elmed confirmed that it could do so. Medveckus then directed Elmed to ship the product to Millennium Surgical customer Cartessa Aesthetics, LLC on behalf of Millennium Equipment—a sale which should have gone to Millennium Surgical.

> **From:** Matthew Medveckus <MMedveckus@millenniumsurgical.com>
> **Sent:** Wednesday, August 10, 2022 6:39 PM
> **To:** Javier Dominguez <javier@elmed.com>; Rick Goettel <rick@elmed.com>
> **Subject:** Re: Custom Cannula
>
> Thank you very much! Below is the address of where you can send them.
>
> Cartessa Aesthetics, LLC
> Attn: Don DiBrita
> 175 Broadhollow Rd., Suite 185
> Melville, NY 11747

l. Swedish First Hill

Millennium Equipment made many sales to one of Medveckus' key Millennium Surgical customers, Swedish First Hill, using Millennium Surgical's trade secrets in the form of pricing lists and customer preferences to compete against Millennium Surgical. However, the customer was not always aware that it was dealing with Millennium Equipment rather than Millennium Surgical. In this July 2023 example, Medveckus—after resigning from Millennium Surgical— caused Millennium Equipment to steal information from Millennium Surgical to make a sale to a customer, which did not realize that Millennium Equipment was relying on stolen information to make a sale.

Medveckus, using Millennium Equipment to impersonate Millennium Surgical, sent a purchase order to the customer, and that purchase order was entered in the Millennium Surgical system, and ultimately sold to the customer by Millennium Equipment, allowing Millennium Equipment to realize the profit on the sale that should have gone to Millennium Surgical.

Thus, Millennium Equipment secretly and without authorization used Millennium Surgical's computer systems to complete its transaction with a customer, all while impersonating Millennium Surgical.

Millennium Surgical, had it known that Medveckus was using Millennium Surgical's computer system, emails, and warehouse to run Millennium Equipment never would have allowed Medveckus to access Millennium Surgical's computer system and emails on behalf of Millennium Equipment.





89.     Upon information and belief, Defendants used their Millennium Surgical email accounts to contact Millennium Surgical suppliers to purchase used medical products. Defendants then sold the used products to Millennium Surgical customers.



---

**From:** Kumar, Naveen <Naveen.Kumar@providence.org>
**Sent:** Friday, August 5, 2022 6:36 PM
**To:** Faxes – Millennium <Fax@millenniumsurgical.com>
**Subject:** ***URGENT**ETA/FOLLOW-UP/TRACKING REQUEST_PO LIST

**[EXTERNAL EMAIL]** DO NOT CLICK links or attachments unless you recognize the sender and know the content is safe.

Dear Vendor,

Kindly update status Order confirmation, ETA for the PO's listed below. For orders which have already shipped,pleaes include tracking information and packing slip , POD

IF item have direct ship from vendor kindly update ETA
IF item rejected , please update reason for rejection, if rejectd due to UOM issue , please provide valid UOM to proceed further,
If item discontinued with sub please update substitute item along with price UOM if there is no sub kindly confirm,
If item is on back order, please update tentative ETA and substitute item to fullfill the order.

If responded already kindly ignore this Email, Kindly reply back to the below email

| VENDOR NAME | PO DATE | PO # | PO_LINE_NO | ORDER CONFIRMATION / ETA | TRACKING | VENDOR'S NOTES |
|---|---|---|---|---|---|---|
| MILLENNIUM SURGICAL CORP (SJHS) | 12/6/2021 11:45 | 3600-11514068 | 1 | | | |

Thank you,
Naveen Kumar Procurement Operations Analyst
The Resource, Engineering and Hospitality Group
St. Joseph Health /Order Acknowledgement/Open order
Naveen.Kumar@providence.org

From: Jim Bruno <JBruno@millenniumsurgical.com>
Sent: Tuesday, August 9, 2022 9:03 AM
To: Matthew Medveckus
Subject: RE: ***URGENT**ETA/FOLLOW-UP/TRACKING REQUEST_PO LIST

Yea please.

From: Matthew Medveckus <MMedveckus@millenniumsurgical.com>
Sent: Tuesday, August 9, 2022 10:02 AM
To: Jim Bruno <JBruno@millenniumsurgical.com>
Subject: RE: ***URGENT**ETA/FOLLOW-UP/TRACKING REQUEST_PO LIST

You want me to see if they will buy this and remarket it to us for this order?

*Matt Medveckus*
*Sales Team Lead*
**Millennium Surgical Corp**
(215) 317-5879 Mobile
Email: mmedveckus@millenniumsurgical.com



From: Jim Bruno <JBruno@millenniumsurgical.com>
Sent: Tuesday, August 9, 2022 8:35 AM
To: Matthew Medveckus <MMedveckus@millenniumsurgical.com>
Subject: RE: ***URGENT**ETA/FOLLOW-UP/TRACKING REQUEST_PO LIST

https://www.ebay.com/itm/314093671396?chn=ps&norover=1&mkevt=1&mkrid=711-117182-37290-0&mkcid=2&itemid=314093671396&targetid=1262749492782&device=c&mktype=&googleloc=9021544&poi=&campaignid=14859008593&mkgroupid=130497710760&rlsatarget=pla-1262749492782&abcid=9300678&merchantid=6296724&gclid=CjwKCAjwi8iXBhBeEiwAKbUofYrmy82iQevqRjN4lR-a2mJIicJDtonbcvaM6lhFEgrq_91EX_2_WRoCHzsQAvD_BwE

https://spwindustrial.com/karl-storz-27076a-endoscopy-lithorite-bladder-stone-crusher-forceps-14/

From: Matthew Medveckus <MMedveckus@millenniumsurgical.com>
Sent: Tuesday, August 9, 2022 8:27 AM
To: Jim Bruno <JBruno@millenniumsurgical.com>
Subject: FW: ***URGENT**ETA/FOLLOW-UP/TRACKING REQUEST_PO LIST

90.     Upon information and belief, Millennium Equipment, through its improper theft of Millennium Surgical's trade secrets, has a budget in excess of $350,000 per year, all of which is attributable theft from Millennium Surgical.

91.     Millennium Equipment could not have operated as a viable entity, including but not limited to, its access to suppliers and customers, without Medveckus and Bruno secretly stealing such access and information from Millennium Surgical on behalf of and through their scheme to operate Millennium Equipment.

92.     Upon information and belief, Millennium Equipment also maintains company information on computer systems other than Millennium Surgical's.

93.     Immediately upon learning of Defendants' secret scheme, Plaintiffs sent Defendants cease and desist letters on July 25, 2023.

94.     In addition, Plaintiffs have been forced to expend extraordinary efforts and resources to discover the truth and obtain evidence of Defendants' wrongdoing, conspiracy, and continuing conduct.

95.     Plaintiffs' investigation to date shows that the unlawful conduct of Defendants began in or before 2020 and continues to this day.

96.     Defendants continue to use Millennium Surgical's trade secrets and confidential information to steal business from Millennium Surgical on behalf of Millennium Equipment.

97.     Defendants' acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiffs and to Plaintiffs' valuable reputation and goodwill with the consuming public for which Plaintiffs have no adequate remedy at law.

## IV.     FACTS PERTAINING TO CLAIMS FOR DECLARATORY JUDGMENT

98.     On August 9, 2023, after Defendants learned that Plaintiffs had uncovered the Millennium Equipment scheme, Medvckus sent a demand letter ("Medveckus Demand Letter") to Avalign alleging that "Millennium violated Mr. Medveckus' rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.* by denying him commissions and failing to properly adjust its performance expectations to account for his FMLA-protected leave of absence."

99.     Based on these allegations, the Medveckus Demand Letter contends that he was constructively discharged from Avalign's employment, and that Avalign additionally violated the Pennsylvania Wage Payment and Collection Law, 43 P.S., 260.1, *et seq.* The Medveckus Demand Letter argued that "this matter presents significant exposure for Millennium" and threatened to

"move forward with the filing of a lawsuit pursuant to Mr. Medveckus' claims under the FMLA and WPCL, as well as the filing of a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission pursuant to his claims under the ADA and PHRA."

100.     In light of the Medveckus Demand Letter and pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, Avalign seeks declaratory judgment that:

    a.  Avalign's compensation paid to Medveckus and its performance expectations of him did not violate the FMLA;

    b.  Avalign's compensation paid to Medveckus did not violate the WPCL;

    c.  Avalign's treatment of Medveckus did not violate the ADA or PHRA;

101.     When he worked for Avalign, Medveckus earned a salary and was paid commissions pursuant to Avalign's commission plan.

102.     The commission-based compensation that Avalign paid Medveckus was according to the commission plan.

103.     In August of 2022, Medveckus was demoted for performance-based reasons from his role a Sales Team Lead.

104.     Despite that demotion, Avalign continued to pay him Sales Team Lead-based commissions through September of 2022—even though he was no longer a Sales Team Lead.

105.     Thus, Avalign paid commission to Medveckus in September of 2022 over and above what it was obligated to pay him under the commission plan.

106.     In May 2023, Medveckus went on FMLA leave.

107.     While he was on FMLA leave, Avalign ensured that Medveckus job was protected.

108.     Medveckus did not perform work for Avalign while he was on FMLA leave because the FMLA does not permit an employer to allow employees to work while they are on FMLA leave.

109.    Thus, while he was on FMLA leave, Medveckus did not –indeed, could not—have made sales pursuant to the commission plan.

110.    Unlike his base salary, Medveckus receives commissions only for sales made pursuant to the commission plan.

111.    Absent making a sale pursuant to the sales commission plan, there is no basis for paying Medveckus a commission.

112.    Medveckus returned to work on June 5, 2023.

113.    On June 13, 2023, Medveckus announced that he was going to voluntarily resign from Avalign.

### COUNT ONE: VIOLATION OF DEFEND TRADE SECRETS ACT
### 18 U.S.C. §§ 1832, *et seq.*

(against all Defendants)

114.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

115.    As set forth more fully above, Plaintiffs' confidential and proprietary trade secrets include, without limitation, Millennium Surgical's non-public information, distributor and/or customer lists, details of pricing and equipment needs for particular customers, details of pricing and equipment availability from particular suppliers, quotes received from suppliers, quotes submitted to customers, negotiations with existing customers, plans for future quotes with existing and prospective customers, business strategies, business documents, and all such similar information necessary for Plaintiffs to conduct business in a competitive marketplace.

116.    Plaintiffs' trade secrets related to products and services used in, or intended for use in, interstate commerce.

33

117.    Plaintiffs' trade secrets are of value to Millennium Equipment, which has been and remains a competitor of Plaintiffs.

118.    Plaintiffs kept their trade secrets from disclosure through all appropriate and necessary means, such that they were not generally known or available to individuals or entities outside of Plaintiffs and their employees who were entrusted with protecting the confidentiality and non-disclosure of Plaintiffs' trade secrets.

119.    Plaintiffs' trade secrets revealed to Millennium Equipment are critical to the success of Millennium Surgical's business.

120.    The individual defendants, Medveckus and Bruno, were aware that Plaintiffs' trade secrets were to be kept confidential and not to be disclosed to competitors and others.

121.    Defendant Millennium Equipment knew that the information obtained from Plaintiffs' computers and other sources was confidential and in the nature of trade secrets, and nevertheless, Millennium Equipment chose to receive and utilize it.

122.    As further set forth above, Defendants misappropriated Plaintiffs' trade secrets by acquiring them through unlawful means, disclosing and using them on behalf of Plaintiffs' competitor and in derogation of Plaintiffs' interest, and continuing to retain possession of them to this day, all in violation of the Defend Trade Secrets Act, 18 U.S.C §§ 1832, *et seq.*

123.    Plaintiffs' trade secrets have been transferred to and maintained on Millennium Equipment computers, electronic accounts, and other electronic devices.

124.    Plaintiffs' trade secrets remain in the possession of Millennium Equipment, and in the possession of the individual defendants as well.

125.    Plaintiffs cannot uncover the full extent of Defendants' theft and misappropriation of Plaintiffs' trade secrets without a forensic examination of Millennium Equipment's computers, electronic accounts, and other electronic devices.

126.    However, because Defendants continue to use electronic records and documents, including forms and other proprietary information that contain or were derived from Plaintiffs' trade secrets, Defendants' misappropriation of Plaintiffs' trade secrets is continuing and ongoing.

127.    As a direct and proximate cause of Defendants' wrongful conduct, Plaintiffs have suffered and will continue to suffer incalculable financial losses, imminent and permanent irreparable harm, loss of the confidentiality of their trade secrets, loss of goodwill, loss of business opportunities, and other continuing harm.

128.    The losses and harm to Plaintiffs are ongoing and cannot be remedied by damages alone.

129.    Plaintiffs have no adequate remedy at law for sufficient compensation for the wrongs committed by Defendants.

130.    Defendants have acted willfully, maliciously, and with reckless disregard to the rights of Plaintiffs, entitling Plaintiffs to recovery of double damages and recovery of its reasonable attorneys' fees.

WHEREFORE, Plaintiffs demand judgement in their favor against Defendants, and requests actual and multiplied damages, preliminary and permanent injunctive relief, including, but not limited to, the immediate return of all of Plaintiffs' confidential and proprietary business information, an Order directing Defendants to refrain from using such information and to cease doing business with all customers obtained, in whole or in part, through the use of Plaintiffs'

confidential and proprietary business information, attorneys' fees, and such other and further relief available under the Defend Trade Secrets Act as this Court deems just.

### COUNT TWO: VIOLATION OF COMPUTER FRAUD AND ABUSE ACT
### 18 U.S.C. §§ 1030, *et seq.*

(against all Defendants)

131.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

132.    Plaintiffs' computers are protected computers for purposes of the CFAA because they are used in or affect interstate commerce.

133.    As Avalign employees, Defendants Medveckus and Bruno were subject to and committed to compliance with Avalign's Code of Conduct.

134.    Avalign's Code of Conduct provides, in relevant part, that:

Every employee has access to confidential information concerning the Company and our customers. **An employee must never use confidential information for personal gain or benefit and information should never be removed from Company premises and should never be discussed with an unauthorized person or outside the Company**. No employee shall attempt to access unauthorized information by circumventing any electronic or non-electronic access controls. Any violation of this confidentiality may result in termination.

Unauthorized use of Company stationery for personal correspondence is prohibited and unauthorized use of Company's name in connection with any solicitation, promotion, or political activity is prohibited.

Our Company will require all employees (regular, part-time, temporary, contract or leased) to recognize the rights reserved by the Company in governing the information gained by the employee. This includes the development of ideas and/or products by the employee, during and following employment. As a condition of employment, you will be required to attest to your understanding of such by signing a Confidentiality and Non-Disclosure Agreement.

(Avalign Code of Conduct at 9-10 (emphasis added)).

135.    Avalign never authorized Defendants Medveckus or Bruno to disclose any information contained on Plaintiffs' protected computers, including but not limited to Millennium Surgical computers and electronic accounts, to Millennium Equipment.

136.    Nor has Avalign ever authorized Millennium Equipment to access Plaintiffs' protected computers.

137.    In violation of the CFAA, Defendants Medveckus and Bruno, while employed at Avalign, and acting in concert with Millennium Equipment, knowingly and with intent to defraud, exceeded their authorized access to Plaintiffs' protected computers by transferring information from Plaintiffs' protected computers to Millennium Equipment.

138.    Further, by intentionally accessing Plaintiffs' protected computers without authorization and/or exceeding the scope of their authorized access and obtaining information from Plaintiffs' protected computers directly and indirectly, Millennium Equipment, Medveckus, and Bruno additionally violated the CFAA.

139.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiffs have suffered damages in excess of $5,000 for each year in which the conduct has occurred.

140.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiffs have also suffered and will continue to suffer incalculable financial losses, imminent and permanent irreparable harm, loss of the confidentiality of its trade secrets, and other continuing harm.

141.    The losses and harm to Plaintiffs is ongoing and cannot be remedied by damages alone.

WHEREFORE, Plaintiffs demand judgment in their favor against Defendants for violation of the Computer Fraud and Abuse Act, and requests all statutory and other damages and fees permitted, preliminary and permanent injunctive relief, including, but not limited to, the immediate

return of all of Plaintiffs' confidential and proprietary business information, and Order directing Defendants to refrain from using such information and to cease doing business with all customers obtained, in whole or in part, through use of Plaintiffs' confidential and proprietary business information, and such other and further relief as this Court deems just.

### COUNT THREE: VIOLATION OF RICO
### 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d)

(against all Defendants)

142.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

143.    As set forth above, Defendants were involved in a scheme to defraud Plaintiffs by committing a series of unlawful acts which constitute predicate racketeering acts under 18 U.S.C. § 1962(c) over a prolonged period of time—in excess of two years—and multiple nefarious bad acts in several short spans during that same prolonged and more than two-year timeframe.

144.    During this lengthy scheme to defraud Plaintiffs, Defendants committed predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1), on multiple occasions and in violation of various federal statutes, including the Defend Trade Secrets Act, 18 U.S.C §§ 1832, *et seq.*, and the federal Mail and Wire Fraud statutes, 18 U.S.C. §§ 1341 and 1343.

145.    For over two years and in a plan which is ongoing, Defendants Medveckus and Bruno worked in concert with one another, committing numerous and repeated violations of the above federal statutes to harm Plaintiffs economically.

146.    At various points in time, Defendants Medveckus and Bruno misappropriated trade secrets of Plaintiffs through unlawful means in violation of the DTSA.

147.    Specifically, Defendants Medveckus and Bruno took distributor and customer lists, marketing tools, software, information, pricing data, invoicing information and forms, supplier

information, customer information, and other proprietary information by downloading, stealing, copying without access, and sending it by electronic mail—all in violation of the DTSA.

148.　As part of this scheme, Defendants Medveckus and Bruno used Millennium Equipment to accomplish their illegal goals and stole or utilized Avalign computers and/or computerized protected business information, trade secrets, and other documents, and provided them to Millennium Equipment.

149.　In perpetuating this scheme, Defendants Medveckus and Bruno used the Internet and mails to accomplish many of their goals in several states.

150.　Specifically, in violation of the federal Mail and Wire Fraud statutes, Defendants Medveckus and Bruno emailed or uploaded countless Avalign proprietary data.

151.　In turn, this information was sent and/or used by Defendants Medveckus, Bruno and/or Millennium Equipment for their advantage and to the disadvantage of Avalign.

152.　Some of the specific acts of mail and wire fraud include, but are not limited to the allegations above that describe how Defendants used the mail system and Internet to perpetuate their fraud against Millennium Surgical.

153.　Defendants used the mails and wires to transfer and download Avalign trade secrets and other proprietary business information to usurp Plaintiffs' business opportunities, existing and prospective customer arrangements, and otherwise harm Plaintiffs.

154.　These transmissions were intentionally concealed from Plaintiffs in order to defraud Plaintiffs and to successfully deprive Plaintiffs of their proprietary information and harm them economically.

155.     Further, Defendants Medveckus, Bruno, and Millennium Equipment schemed to convince numerous Millennium Surgical employees to join Medveckus and Bruno in competing against Millennium Surgical.

156.     During this time, these same Defendants communicated with one another by electronic means and across state lines to take proprietary information from Millennium Surgical computers and the Millennium Surgical information system.

157.     As set forth above, these actions were plentiful and occurred over a prolonged period of time from June 2020 to present.

158.     Millennium Equipment engaged in, and its activities affect, interstate commerce.

159.     Further, Millennium Equipment operates in numerous states and was used in furtherance of the scheme to defraud Plaintiff.

160.     Millennium Equipment provided an enterprise through which Defendants Medveckus and Bruno carried out their fraudulent activities, as described above.

161.     Meetings of the group were conducted, and plans to further the scheme against Plaintiffs were created and discussed during these meetings, whether in person or by telephone or by electronic mail.

162.     The leadership decided on a strategy and executed a plan to defraud Plaintiffs by committing a pattern of racketeering activity, which was a series of continuous acts in violation of federal laws over more than two years, including, but not limited to, theft of trade secrets, and mail and wire fraud described above.

163.     Each of the predicate acts perpetrated by these same Defendants in furtherance of the scheme to defraud Plaintiffs occurred in the conduct of an enterprise—Millennium Equipment—through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

164.    As a direct and proximate result of the pattern of racketeering activity, by and through each of the unlawful acts recited herein, Plaintiffs have been injured in its business and property, including, but not limited to, trade secrets, intellectual property, protected business information, and equipment.

WHEREFORE, Plaintiffs demand judgement in their favor against Defendants for violation of 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d), and requests all available statutory remedies, actual, multiplied, and punitive damages, preliminary and injunctive relief, an Order directing Defendants to refrain from using Plaintiffs' confidential and proprietary business information, and to cease doing business with all customers which it obtained, in whole or in part, through the use of Plaintiffs' confidential and proprietary business information, and such other relief as this Court deems just.

### COUNT FOUR: VIOLATION OF PENNSYLVANIA
### UNIFORM TRADE SECRETS ACT
### 12, P.S. §§ 5031 *et seq.*

(against all Defendants)

165.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

166.    As set forth more fully above, Plaintiffs' confidential and proprietary trade secrets include, without limitation, Plaintiffs' non-public financial information, distributor and/or customer lists, details of pricing and equipment needs for particular customers, details of pricing and equipment available from particular suppliers, quotes received from suppliers and submitted to customers, negotiations with existing customers, plans for future quotes with existing and prospective customers, business strategies, and all such similar information necessary for Plaintiffs to conduct business in a competitive marketplace.

167.    Plaintiffs' trade secrets are of value to Millennium Equipment, who is a competitor of Millennium Surgical.

168.    As set forth above, Defendants misappropriated Plaintiffs' trade secrets by acquiring them through unlawful means and disclosing and using them on behalf of Plaintiffs' competitor, in and derogation of Plaintiffs' interest, in violation of the Pennsylvania Uniform Trade Secrets Act, 12 P.S. § 5301, *et seq.*

169.    As a direct and proximate cause of Defendants' wrongful conduct, Plaintiffs have suffered and will continue to suffer incalculable financial losses, imminent and permanent irreparable harm, loss of the confidentiality of its trade secrets, loss of goodwill, loss of business opportunities, and other continuing harm.

170.    The losses and harm to Plaintiffs are ongoing and cannot be remedied by damages alone.

171.    Plaintiffs have no adequate remedy at law for sufficient compensation for the wrongs committed by Defendants.

172.    Defendants have acted willfully, maliciously, and with reckless disregard to the rights of Plaintiffs, entitling Plaintiffs to recovery of double damages and recovery of reasonable attorneys' fees.

WHEREFORE, Plaintiffs demands judgement in their favor against Defendants for violation of the Pennsylvania Uniform Trade Secrets Act, and requests actual and multiplied damages, preliminary and permanent injunctive relief, including, but not limited to, the immediate return of all of Plaintiffs' confidential and proprietary business information, an Order directing Defendants to refrain from using such information and to cease doing business with all customers

obtained, in whole or in part, through the use of Plaintiffs' confidential and proprietary business information, attorneys' fees, and such other and further relief as this Court deems just.

## COUNT FIVE: BREACH OF DUTY OF LOYALTY

### (against Defendants Medveckus and Bruno)

173.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

174.    Defendants Medveckus and Bruno owed a duty of loyalty to Plaintiffs, which they were required to exercise in good faith in the performance of their duties.

175.    As part of that duty of loyalty, Medveckus and Bruno were obligated to maintain the confidentiality of Plaintiffs' proprietary and confidential information and trade secrets, and to use information and their efforts only in furtherance of Plaintiffs' interests, and not in furtherance of their own interests or that of any competitor to Avalign.

176.    Medveckus and Bruno breached their duties of loyalty to Avalign by, among other things:

   a.  Failing to act solely for the benefit of Millennium Surgical during their employment with Millennium Surgical

   b.  Using Millennium Surgical's information, facilities, property, and computer systems to promote their personal interests and the interests of Millennium Equipment, in derogation of Plaintiffs' interests; and

   c.  Unlawfully disclosing and providing to Millennium Equipment Plaintiffs' confidential, proprietary, and business information.

177.    As a direct and proximate result of Defendants' Medveckus and Bruno's unlawful actions, Plaintiffs have suffered, are suffering, and will continue to suffer incalculable financial loss, imminent and permanent irreparable harm, loss of the confidentiality of their proprietary business information, goodwill, business opportunity, and other damages.

178.     Defendants Medveckus and Bruno acted intentionally, willfully, maliciously, and with reckless disregard of Plaintiffs' rights.

179.     Plaintiffs have no adequate remedy at law to compensate for the losses they have incurred and will continue to incur as a result of Defendants Medveckus and Bruno' s unlawful conduct.

WHEREFORE, Plaintiffs demand judgment in their favor against Defendants Medveckus and Bruno for breaching their duty of loyalty, and requests actual and punitive damages, preliminary and injunctive relief, the immediate return of all of Plaintiffs' confidential and proprietary business information, an Order directing Medveckus and Bruno to refrain from using such information and to cease doing business with all customers obtained, in whole or in part, through the use of Plaintiffs' confidential and proprietary business information, and such other and further relief as this Court deems just.

## COUNT SIX: BREACH OF CONTRACT

(against Defendants Medveckus and Bruno)

180.     Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

181.     The Confidentiality and Non-Compete Agreement bound Defendant Medveckus to confidentiality, non-disclosure, non-compete, and non-solicitation obligations to Millennium Surgical.

182.     Defendant Medveckus received financial renumeration in connection with the agreement.

183.     Defendant Medveckus breached the Confidentiality and Non-Compete Agreement by competing against Millennium Surgical through his direction of and employment with Millennium Equipment, which competes with the "Company's Business" as defined by the

Confidentiality and Non-Compete Agreement. (Confidentiality and Non-Compete Agreement, ¶ 1).

184.    Defendant Medveckus breached the Confidentiality and Non-Compete Agreement by making direct and indirect unauthorized disclosures of Plaintiffs' protected business information, all of which constitutes "Confidential Information" as defined in the Confidentiality and Non-Compete Agreement. (Confidentiality and Non-Compete Agreement, ¶ 5).

185.    Defendant Medveckus breached the Confidentiality and Non-Compete Agreement by soliciting Millennium Surgical's suppliers, vendors, and customers in service of Millennium Equipment, a competitor of Millennium Surgical as defined by the Confidentiality and Non-Compete Agreement. (Confidentiality and Non-Compete Agreement, ¶ 2).

186.    As a direct and proximate cause of Defendant Medveckus' breach of his Agreement, Plaintiffs have suffered, and will continue to suffer incalculable financial losses, imminent and permanent irreparable harm, and the loss of confidentiality of their proprietary business information and trade secrets, goodwill, business opportunities, and other damages.

187.    Defendant Medveckus acted willfully, maliciously, and with reckless disregard toward Plaintiffs' rights.

188.    Plaintiffs have no adequate remedy at law to compensate for the losses they have incurred and continue to incur as a result of Defendant Medveckus' unlawful conduct.

WHEREFORE, Plaintiffs demand judgement in their favor against Defendant Medveckus for his breach of his contractual obligations, and requests a disgorgement of the renumeration paid to Medveckus under the Confidentiality and Non-Compete Agreement, damages, preliminary and permanent injunctive relief, and such other and further relief as this Court deems just.

## COUNT SEVEN: UNJUST ENRICHMENT

### (against all Defendants)

189.     Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

190.     Defendants sought to be enriched and were enriched by their unlawful misappropriation of Plaintiffs' trade secrets and other confidential and proprietary business information.

191.     In using Plaintiffs' protected business information, such as customer and supplier pricing and equipment data, information about future business opportunities, and lists of existing and prospective customers and/or distributors, Defendants were unjustly enriched by obtaining business they could not have obtained otherwise.

192.     Defendants improperly utilized such information for their own enrichment and to the detriment and harm of Plaintiff, in derogation of Plaintiffs' rights.

193.     Defendants are obligated to disgorge the benefits from their unlawful conduct, and to compensate Plaintiffs in the amount of all wrongfully obtained business, profits, and benefits.

194.     Further, it would be unequitable, unfair, and unconscionable for the Defendants to be allowed to continue to benefit from their unlawful conduct without paying appropriate compensation to Plaintiff.

195.     As a direct and proximate cause of Defendants' conduct, Plaintiffs have suffered and will continue to suffer incalculable financial loss, imminent and permanent irreparable harm, and the loss of the confidentiality of their proprietary business information and trade secrets, good will, business opportunities and other damages.

196.     Plaintiffs have no adequate remedy at law to compensate for the losses they have incurred and continue to incur as a result of Defendants' unlawful conduct.

WHEREFORE, Plaintiffs demand judgment in their favor against Defendants for unjust enrichment, and requests actual and punitive damages, preliminary and permanent injunctive relief, an Order directing Defendants to refrain from using Plaintiffs' confidential and proprietary business information and to cease doing business with all customers obtained, in whole or in part, through the use of Plaintiffs' confidential and proprietary business information, and such other and further relief as this Court deems just.

## COUNT EIGHT: CIVIL CONSPIRACY

### (against all Defendants)

197.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

198.    While Defendants Medveckus and Bruno were employees of Plaintiffs, Defendants Medveckus and Bruno agreed to solicit business from existing and prospective customers of Plaintiffs and, to this end, misappropriate Plaintiffs' confidential and proprietary business information.

199.    The solicitation of the existing and potential customers was unlawful because it violated the Confidentiality and Non-Compete Agreement and the law, including but not limited to Defendants Medveckus' and Bruno's common law duties of loyalty, the Pennsylvania Uniform Trade Secrets Act, and the Defend Trade Secrets Act.

200.    Defendants Medveckus and Bruno acted with malice in agreeing to solicit business from existing and prospective customers of Plaintiffs and to misappropriate Plaintiffs' confidential and proprietary business information.

201.    Defendants Medveckus and Bruno have acted in furtherance of their agreement by soliciting business from existing and prospective customers of Plaintiffs and misappropriating Plaintiffs' confidential and proprietary business information.

202.    As a result of their agreement, Defendants Medveckus and Bruno have caused present and future damages, some of which are incapable of calculation, including loss of reputation, goodwill, and future business opportunities.

203.    In taking these actions, Defendants Medveckus and Bruno have acted intentionally, maliciously, or in reckless disregard of the rights of Plaintiffs such that an award of punitive damages is justified.

WHEREFORE, Plaintiffs demand judgment in their favor against Defendants Medveckus and Bruno for civil conspiracy, and requests actual and punitive damages, preliminary and injunctive relief, the immediate return of all of Plaintiffs' confidential and proprietary business information, an Order directing Medveckus and Bruno to refrain from using such information and to cease doing business with all customers obtained, in whole or in part, through the use of Plaintiffs' confidential and proprietary business information, and such other and further relief as this Court deems just.

## COUNT NINE: FEDERAL UNFAIR COMPETITION
## (TRADEMARK INFRINGEMENT)

### (against all Defendants)

204.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

205.    Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods and services, and is likely to cause, and has caused, consumers to believe, contrary to fact,

that Defendants' goods and services are sold, authorized, endorsed, or sponsored by Plaintiffs, or that Millennium Equipment is in some way affiliated with or sponsored by Plaintiffs. Defendants' conduct therefore constitutes trademark and/or service mark infringement in violation of Section43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a).

206. Upon information and belief, Defendants have committed the foregoing acts of infringement with full knowledge of Plaintiffs' prior rights in the "Millennium Surgical" Mark and with the willful intent to cause confusion and trade on Plaintiffs' goodwill.

207. Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiffs and confuse the public unless enjoined by this court. Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs are entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT TEN: FEDERAL UNFAIR COMPETITION
## (FALSE DESIGNATION OF ORIGIN)
## 15 U.S.C. § 1125 *et seq.*

(against all Defendants)

208. Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

209. Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive, and has deceived, consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods and services, and is likely to cause consumers to believe, contrary to fact,

that Defendant's goods and services are sold, authorized, endorsed, or sponsored by Plaintiffs, or that Millennium Equipment is in some way affiliated with or sponsored by Plaintiffs.

210. Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

211. Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiffs.

212. Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

213. Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiffs and confuse the public unless enjoined by this court. Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs are entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

### COUNT ELEVEN: PENNSYLVANIA COMMON LAW UNFAIR COMPETITION (TRADEMARK INFRINGEMENT)

(against all Defendants)

214. Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

215. Defendants' use of the Infringing Mark constitutes common law trademark infringement and unfair competition in violation of Pennsylvania common law.

216. On information and belief, Defendants' acts of common law trademark infringement and unfair competition have been done willfully and deliberately, and Defendants have profited and been unjustly enriched by sales that Defendants would not otherwise have made if not for Defendants' unlawful conduct.

217. Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive, and has deceived, consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods and services, and is likely to cause, and has caused, consumers to believe, contrary to fact, that Defendant's goods and services are sold, authorized, endorsed, or sponsored by Plaintiffs, or that Millennium Equipment is in some way affiliated with or sponsored by Plaintiffs.

218. Defendants' willful and deliberate acts described above have caused injury and damages to Plaintiffs, and have caused irreparable injury to Plaintiffs' goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs seek injunctive relief in the form of a preliminary injunction prohibiting Defendants from continuing to infringe on Plaintiffs' "Millennium Surgical" Mark until this Court holds a trial on the merits, at which time a permanent injunction will be sought. Further, Plaintiffs demand judgment against Defendants and an award of actual, consequential, and punitive damages to the extent damages are ascertainable. Plaintiffs also seek costs of suit and attorneys' fees, and such other further relief as this Court deems just.

## COUNT TWELVE: PENNSYLVANIA TRADEMARK DILUTION
## 54 Pa. C.S.A. § 1124

(against all Defendants)

219.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

220.    The "Millennium Surgical" Mark is a famous mark in the Commonwealth of Pennsylvania within the meaning of 54 Pa. C.S.A. § 1124 and were famous prior to the date of Defendants' adoption and use of the Infringing Mark.

221.    Defendants' conduct, as described in this Complaint, has diluted, is diluting, and will dilute the "Millennium Surgical" Mark, thereby lessening the capacity of that Mark to identify and distinguish goods and services marketed and sold by Plaintiffs under the "Millennium Surgical" Mark.

222.    On information and belief, Defendants' acts of trademark dilution have been done willfully and deliberately, and Defendants have profited and been unjustly enriched by sales that Defendants would not have made but for Defendants' unlawful conduct.

223.    Defendants' acts described above have caused injury and damages to Plaintiffs, and have caused irreparable harm to Plaintiffs' goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs seek injunctive relief in the form of a preliminary injunction prohibiting Defendants from continuing to dilute Plaintiffs' "Millennium Surgical" Mark until this Court holds a trial on the merits, at which time a permanent injunction will be sought. Further, Plaintiffs demand judgment against Defendants and an award of actual, consequential, and punitive damages to the extent damages are ascertainable. Plaintiffs also seek costs of suit and attorneys' fees, and such other further relief as this Court deems just.

## COUNT THIRTEEN: CONVERSION

### (against all Defendants)

224.     Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

225.     The confidential/trade secret information described above is the property of Plaintiffs.

226.     Defendants have no legal interest in the confidential/trade secret information.

227.     Defendants have used and are using the confidential/trade secret information without Plaintiffs' consent.

228.     In doing so, Defendants have caused present and future damages to Plaintiffs, some of which are incapable of calculation, including loss of reputation, goodwill, and future business opportunities.

229.     In taking these actions, Defendants have acted intentionally, maliciously, or in reckless disregard of the rights of Plaintiffs such that an award of punitive damages is justified.

WHEREFORE, Plaintiffs seek injunctive relief in the form of a preliminary injunction prohibiting Defendants from continuing to convert the confidential/trade secret information until this Court holds a trial on the merits, at which time a permanent injunction will be sought. Further, Plaintiffs demand judgment against Defendants and an award of actual, consequential, and punitive damages to the extent damages are ascertainable. Plaintiffs also seek costs of suit and attorneys' fees, and such other further relief as this Court deems just.

## COUNT FOURTEEN: TORTIOUS INTERFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONS

### (against all Defendants)

230.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

231.    Plaintiffs have existing contractual relationships with its customers and/or suppliers.

232.    Defendants have intentionally interfered with these contracts by attempting to solicit business from Plaintiffs' customers and/or suppliers.

233.    Defendants Medveckus and Bruno are not entitled to interfere with these contractual relationships, which are protected by the Confidentiality and Non-Compete Agreement.

234.    In addition, the use of Plaintiffs' confidential and proprietary business information to interfere with the relationships is improper.

235.    Defendants have tortiously interfered with the contractual relationships for the benefit of Millennium Equipment and themselves, and caused present and future damages to Plaintiffs, some of which are incapable of calculation, including loss of reputation, goodwill, and future business opportunities.

236.    In taking these actions, Defendants have acted intentionally, maliciously, or in reckless disregard of the rights of Plaintiffs such that an award of punitive damages is justified.

WHEREFORE, Plaintiffs seek injunctive relief in the form of a preliminary injunction prohibiting Defendants from continuing to solicit Plaintiffs' customers and suppliers until this Court holds a trial on the merits, at which time a permanent injunction will be sought. Further, Plaintiffs demand judgment against Defendants and an award of actual, consequential, and

punitive damages to the extent damages are ascertainable. Plaintiffs also seek costs of suit and attorneys' fees, and such other further relief as this Court deems just.

## COUNT FIFTEEN: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

### (against all Defendants)

237.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

238.    The Non-Compete, Non-Solicitation, and Confidentiality Agreement ("Confidentiality and Non-Compete Agreement") is a valid and enforceable contract between Plaintiffs and Denise Smith and between Plaintiffs and Jeff Cranage.

239.    The Confidentiality and Non-Compete Agreement obligated Smith and Cranage to preserve Millennium Surgical's confidential and trade secret information, to refrain from competing against Millennium Surgical while employed and for a specified time period thereafter, and prohibited them from soliciting suppliers and customers in competition with Millennium Surgical.

240.    Defendants have intentionally interfered with the Confidentiality and Non-Compete Agreement by directing Smith and Cranage to service customers on behalf of Millennium Equipment to the detriment of Plaintiffs.

241.    Defendants' interference in the contractual relationships between Plaintiffs and Smith and Cranage was improper because Defendants' interference did not represent legitimate business competition, and Defendants had no legal or contractual right, privilege, or justification to interfere.

242.     Defendants had a motive to interfere with Plaintiffs' contracts to advance Millennium Equipment's interests and Medveckus' and Bruno's own interests.

243.     Defendants sought to advance Millennium Equipment's interests and their own interests by interfering with Plaintiffs' contractual relationships by directing Smith and Cranage to take actions that assisted Defendants' in stealing customer orders that should have gone to Plaintiffs and diverting them to Millennium Equipment.

244.     As a consequence of Defendants tortiously interfering with the Non-Compete, Non-Solicitation, and Confidentiality Agreements, Plaintiffs have suffered present and future damages, which are in some respects incapable of calculation, including loss of reputation, goodwill, and future business opportunities.

245.     In taking these actions, Defendants acted willfully, wantonly, and/or with reckless indifference of the rights of Plaintiffs such that an award of punitive damages is justified.

WHEREFORE, Plaintiffs demand judgment in their favor against Defendants for tortious interference with contractual relations, and requests actual and punitive damages, preliminary and permanent injunctive relief, an Order directing Defendants to refrain from using Plaintiffs' confidential and proprietary business information and to cease doing business with all customers obtained, in whole or in part, through the use of Plaintiffs' confidential and proprietary business information, and such other and further relief as this Court deems.

## COUNT SIXTEEN: TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL AND BUSINESS RELATIONSHIPS

(against all Defendants)

246.     Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

247. At all relevant times, Millennium Surgical has prospective contractual relationships with its customers and suppliers. Plaintiffs reasonably believed that this relationship would continue, and the parties would enter into an additional contracts but for the Defendants' interference.

248. Defendants have intentionally interfered with these prospective contractual relationships by soliciting and attempting to solicit business from Plaintiffs' customers and suppliers.

249. Defendants' interference in the prospective contractual relationship between Plaintiffs and Plaintiffs' customers and suppliers was improper because Defendants' interference did not represent legitimate business competition, and Defendants had no legal or contractual right, privilege, or justification to interfere.

250. Defendants' use of Plaintiffs' confidential and proprietary business information information to interfere with the relationships is improper.

251. Defendants had a motive to interfere with Plaintiffs' prospective contractual relationship to advance Millennium Equipment's interest and Medveckus' and Bruno's own interests in direct competition with Plaintiffs.

252. Defendants sought to advance Millennium Equipment's interests and their own interests by interfering with Plaintiffs' prospective contractual relationships by secretly stealing customer and/or supplier orders that should have gone to Plaintiffs and diverting them to Millennium Equipment.

253. Protecting Plaintiffs' prospective contractual interest is in the public interest. In particular, it is in the public interest to protect the confidential and proprietary business information

of businesses from theft and/or misappropriation, particularly from the employees in whom businesses place their trust.

254.     Defendants have tortiously interfered with the prospective contractual relationships for the benefit of Millennium Equipment and themselves, and caused present and future damages to Plaintiffs, some of which are incapable of calculation, including loss of reputation, goodwill, and future business opportunities.

255.     In taking these actions, Defendants have acted intentionally, maliciously, or in reckless disregard of the rights of Plaintiffs such that an award of punitive damages is justified.

WHEREFORE, Plaintiffs demand judgment in their favor against Defendants for tortious interference with prospective contractual relations, and requests actual and punitive damages, preliminary and permanent injunctive relief, an Order directing Defendants to refrain from using Plaintiffs' confidential and proprietary business information and to cease doing business with all customers obtained, in whole or in part, through the use of Plaintiffs' confidential and proprietary business information, and such other and further relief as this Court deems.

## COUNT SEVENTEEN: DECLARATORY RELIEF
### Pennsylvania Wage Payment and Collection Law ("WPCL")
### 43 Pa. Stat. Ann. § 260.1

(against Medveckus)

256.     Avalign incorporates by reference all of the above paragraphs as if set forth fully herein.

257.     The Medveckus Demand Letter contends Avalign violated the WPCL by "blocking" him from collecting $9,350 Sales Team Lead override commissions after September 2022.

258.    The commission plan, however, did not entitle Medveckus to Sales Team Lead override commissions after his demotion from Sales Team Lead in August 2022.

259.    Nor does the Medveckus Demand Letter contend otherwise by making a breach of contract allegation. Instead, Medveckus attempts to important an unwritten obligation through a good faith and fair dealing argument.

260.    But in Pennsylvania, a good faith and fair dealing claim must be tied to a breach of contract claim.

261.    Absent Avalign being required to pay Medveckus Sales Team Lead override commissions after his demotion from the Sales Team Lead position, the WPCL does not otherwise obligate Avalign to pay Medveckus commissions that he was not entitled to receive.

262.    Medveckus' purported claims are barred by the doctrine of unclean hands and/or estoppel, and/or are subject to setoff.

WHEREFORE, because there is no basis for Medveckus' claims of WPCL violations, this Court should issue declaratory relief in Avalign's favor.

## COUNT EIGHTEEN: DECLARATORY RELIEF
### Family and Medical Leave Act ("FMLA")
### 29 U.S.C. § 2601, *et seq.*

(against Medveckus)

263.    Avalign incorporates by reference all of the above paragraphs as if set forth fully herein.

264.    The Medveckus Demand Letter contends that Avalign violated the FMLA by not paying Medveckus commission for the month of May 2023 when he was on FMLA leave.

265.    However, the FMLA does not permit Medveckus to work while he is on FMLA leave.

266. And while on FLMA, therefore, Medveckus did not and could not have made sales that would have entitled him to receive commissions for the month of May 2023.

267. In addition, because he was not able to make sales for the month of May 2023, Avalign adjusted Medveckus' annualized sales requirements to account for the fact that he was not able to work in May due to his FMLA leave. That is, contrary to the Medveckus Demand Letter, Avalign did adjust its performance expectations for Medveckus to account for the fact that he did not work in May 2023 due to FMLA leave. The adjustment was to lower his overall sales targets to reflect that he was not able to work for a month. In this respect, Avalign ensured that Medveckus' entitlement to commissions would not suffer because of his FMLA leave, thus eliminating the FMLA leave as a "negative factor."

268. Nor did Avalign constructively discharge Mr. Medveckus. He resigned voluntarily on June 13, 2023, less than a month after returning to work from FMLA.

269. His resignation caught Avalign leadership by surprise.

270. Moreover, Bill Kearns did not make the alleged statements referred to in the Medveckus Demand Letter insofar as it suggests Mr. Kearns told Medveckus he should be thankful he still has a job.

271. Medveckus' purported claims are barred by the doctrine of unclean hands and/or estoppel, and/or are subject to setoff.

WHEREFORE, because there is no basis for Medveckus' claims of FMLA violations, this Court should issue declaratory relief in Avalign's favor.

**COUNT NINETEEN: DECLARATORY RELIEF**
**Americans with Disabilities Act ("ADA"),**
**42 U.S.C. § 12101, *et seq.***
**–and–**
**Pennsylvania Human Relations Act ("PHRA"),**
**43 P.S. § 951, *et seq.***

(against Medveckus)

272.     Avalign incorporates by reference all of the above paragraphs as if set forth fully herein.

273.     There is no factual basis in the Medveckus Demand Letter to support his allegations that Avalign improperly discriminated against him on the basis of a disability or in violation of the PHRA.

274.     The Medveckus Demand Letter does not identify a disability of Mr. Medveckus, nor is Avalign aware of one.

275.     Nor does the Medveckus Demand Letter identify any action that Avalign took against Mr. Medveckus on the basis of any perceived disability.

276.     To the contrary, Avalign treated Medveckus as it was required to do so under the FMLA, and paid him accordingly—even while Medveckus was secretly competing against Avalign, operating Millennium Equipment while on FMLA leave.

277.     Medveckus' purported claims are barred by the doctrine of unclean hands and/or estoppel, and/or are subject to setoff.

WHEREFORE, because there is no factual or legal basis for Medveckus' claims of discrimination under the ADA and PHRA, this Court should issue declaratory relief in Avalign's favor.

Dated: August 29, 2023

**BAKER HOSTETLER LLP**

By:  s/ Julian D. Perlman
Julian D. Perlman (326602)
1735 Market Street, Suite 3300
Philadelphia, PA 19103
Tel: (215) 564-8338
jperlman@bakerlaw.com

Dustin M. Dow (*Pro Hac Vice* forthcoming)
Jeffrey R. Vlasek (*Pro Hac Vice* forthcoming)
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
Tel: (216) 321-2000
ddow@bakerlaw.com
jvlasek@bakerlaw.com

Devin F.J. Haymond (*Pro Hac Vice* forthcoming)
BAKER & HOSTETLER LLP
1 North Wacker Drive, Suite 4500
Chicago, IL 60606
Tel: (312) 416-6200
dhaymond@bakerlaw.com

*Attorneys for Plaintiffs.*